FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 15, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KELVION, INC., a foreign
corporation,

      Plaintiff - Appellant,

v.

PETROCHINA CANADA LTD.,
formerly known as BRION ENERGY
CORPORATION, a foreign
corporation,

      Defendant - Appellee.

No. 17-5097

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 4:17-CV-00355-GKF-FHM)**

Samanthia S. Marshall (W. Kirk Turner with her on the briefs), McAffee & Taft,
P.C., Tulsa, Oklahoma, for Appellant.

Richard D. Salgado, Dentons US LLP (Wade P. K. Carr, Dentons US LLP,
Kansas City, Missouri, with him on the brief), Dallas, Texas, for Appellee.

Before **TYMKOVICH**, Chief Judge, **McKAY** and **CARSON**, Circuit Judges.

**TYMKOVICH**, Chief Judge.

PetroChina Canada bought ten large heat-exchanger units from Kelvion's Oklahoma plant for use in PetroChina's oil and gas operations. Their contract included a mandatory forum-selection clause subjecting the parties to Canadian jurisdiction. After a dispute over unanticipated delivery costs that PetroChina refused to pay, Kelvion brought suit in Oklahoma. It asserted quantum meruit and unjust enrichment claims, arguing the forum-selection clause did not apply to its equitable claims.

The district court disagreed, concluding the forum-selection clause applied, and dismissed the suit under the doctrine of *forum non conveniens*. We agree— the parties plainly intended any dispute arising from their contract would be heard in Canadian courts. We affirm the district court's dismissal for *forum non conveniens*.

## I. Background

In August 2012, PetroChina Canada, a Canadian corporation, purchased ten heat exchanger units from Kelvion's principal place of business in Catoosa, Oklahoma.[1] The parties agreed Kelvion would manufacture the exchangers "and arrange for their shipment to [PetroChina's] facility" in Alberta, Canada. App. 158. The Purchase Order Agreement contained the following provision:

---

[1] References to Kelvion and PetroChina include their predecessors-in-interest, which were the signatories to the contract.

> This Purchase Order shall be governed by and construed in accordance with the laws of the Province of Alberta and the Parties agree to accept and submit to the exclusive jurisdiction of the courts of the Province of Alberta.

*Id.* 228, § 20.1. The Purchase Order also provided that "[c]ost changes . . . will not be accepted unless official change order(s) have been issued by [PetroChina]." *Id.* 202. Once approved, Change Orders became incorporated into the Purchase Order as amendments.

Kelvion provided PetroChina a shipping estimate and shipped the exchangers from Oklahoma in February 2014. Because of unanticipated delays and seasonal restrictions on shipping weights over Canadian roads in the winter, delivery costs exceeded Kelvion's original estimate by $671,324. Kelvion never submitted nor did PetroChina approve any change order for the increased shipping costs.

After a long period of negotiation, Kelvion filed suit in Oklahoma state court in May 2017 asserting breach of contract, quantum meruit, and unjust enrichment claims. PetroChina promptly removed to federal court and filed a motion to dismiss for *forum non conveniens* based on the Purchase Order's mandatory forum-selection clause. Kelvion dropped its breach of contract claim, but insisted the forum-selection clause did not apply to its equitable claims because they addressed matters outside the scope of the contract. The district

court dismissed for *forum non conveniens* after determining the Purchase Order's forum-selection clause governed Kelvion's claims.

## II. Analysis

The doctrine of *forum non conveniens* permits a court to dismiss a case when an adequate alternative forum exists in a different judicial system and there is no mechanism by which the case may be transferred. *See* Charles Alan Wright et al., 14D Fed. Prac. & Proc. Juris. § 3828 (4th ed., Nov. 2018 update). Generally, *forum non conveniens* is proper when an adequate alternative forum is available and public- and private-interest factors weigh in favor of dismissal. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–61 (1981); *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 495 (10th Cir. 2012).

The Supreme Court directs us to several considerations in analyzing whether an action should be dismissed for *forum non conveniens* pursuant to a forum-selection clause. *See Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 60 (2013). At the outset, a court must determine whether the forum-selection clause controls. If the clause controls and points to a state or foreign forum, then the court may apply the doctrine of *forum non conveniens*. *See id.* When determining whether to dismiss for *forum non conveniens*, the court grants no weight to the plaintiff's choice of forum or the parties' private interests, since these are deemed to have been fully expressed in the contract and weigh in favor

-4-

of dismissal. *Id.* at 63–64 & n.8. A "valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 63 (alteration omitted).

Nevertheless, Kelvion argues its equitable claims relate to expenses not bargained for in the contract and thus the forum-selection clause does not control. Kelvion also contends the forum-selection clause cannot apply because the Purchase Order is not a basis for its legal claims.

### A. Standard of Review

As an initial matter, we must determine the appropriate legal framework. In the aftermath of *Atlantic Marine*, courts have considered several approaches to reviewing a district court's dismissal of an action for *forum non conveniens* when a forum-selection clause applies. For example, the Fifth Circuit adopted a bifurcated standard of review. Under this standard, the Fifth Circuit "review[s] the district court's interpretation of the [forum-selection clause] and its assessment of that clause's enforceability *de novo*, then . . . review[s] for abuse of discretion the court's balancing of the private- and public-interest factors." *Weber v. PACT XPP Techs., A.G.*, 811 F.3d 758, 768 (5th Cir. 2016). The Fourth Circuit traditionally applied a de novo standard of review, but acknowledged that the abuse-of-discretion standard may be more appropriate post-*Atlantic Marine*. *See BAE Sys. Tech. Solution & Servs., Inc. v. Republic of Korea's Defense*

*Acquisition Program Admin.*, 884 F.3d 463 (4th Cir. 2018) (declining to resolve the correct standard of review).

We find the Fifth Circuit's bifurcated standard sensible and adopt it as our own.  Indeed, this standard follows our existing practice for contract interpretation and *forum non conveniens*: questions of contract interpretation are reviewed de novo, *In re: Motor Fuel Temperature Sales Practices Litig.*, 872 F.3d 1094, 1104 (10th Cir. 2017), and *forum non conveniens* dismissals are reviewed for abuse of discretion, *Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799, 803 (10th Cir. 2016).

Thus, we proceed de novo to interpret the forum-selection clause and determine its applicability to this dispute.  We then consider whether the district court abused its discretion in dismissing the case.

## B. Applicability of the Forum-Selection Clause

The scope of a forum-selection clause is evaluated according to ordinary principles of contractual interpretation.  *See, e.g.*, *Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 925 (10th Cir. 2005); *K & V Sci. Co. v. BMW*, 314 F.3d 494, 497 (10th Cir. 2002).[2]  Other circuits have held a forum-

_____

[2] In this circuit, forum-selection clauses are also construed according to the governing law selected in the contract.  *See Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 431 (10th Cir. 2006).  Here, the Purchase Order's choice-of-law clause adopts "the laws of the Province of Alberta."  App. 228, § 20.1.  PetroChina observes

(continued...)

-6-

selection clause will apply to claims that "ultimately depend on the existence of a contractual relationship between the parties," *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *overruled on other grounds by Lauro Lines S.R.L., v. Chasser*, 490 U.S. 495 (1989); where "resolution of the claims relates to interpretation of the contract," *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988); or when the claims "involv[e] the same operative facts as a parallel claim for breach of contract," *Lambert v. Kysar*, 983 F.2d 1110, 1122 (1st Cir. 1993).

The provision here contains two independent clauses addressing choice of law and forum selection. The choice-of-law clause governs interpretation of "[t]his Purchase Order," while the forum-selection clause commits "the Parties" to the "exclusive jurisdiction of the courts of the Province of Alberta." App. 228, § 20.1. Although there is no explicit limit to the types of disputes the parties are obligated to bring in the courts of Alberta under this clause, the conjunction linking the two clauses suggests the claims must be sufficiently connected to

---

[2](...continued)
that Canadian law applies similar rules of basic contract interpretation and encourages forum-selection clauses, citing *Sabean v. Portage La Prairie Mutual Insurance Co.*, [2017] 1 S.C.R. 121, 127 (Can.), and *Z.I. Pompey Industrie v. ECU Line N.V.*, [2003] 1 S.C.R. 450, 462–63 (Can.), respectively. Kelvion does not contest these points and we assume without deciding that Canadian law would apply similar contractual principles as our own.

"[t]his Purchase Order."[3]  The provision does not contain potentially broadening language, such as "related to," "associated with," or "arising in connection to." *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007) (contrasting these phrases with potentially narrower constructions such as "arising from").[4]

Even without such broadening language, Kelvion's equitable claims are inextricably linked to the Purchase Order.  Its claims arise directly from the agreement, depend on the existence of the agreement, require the court to interpret the agreement, and involve the same operative facts as a claim for breach of the agreement.  Kelvion's claims are not merely collateral matters, as it asserts.

The Purchase Order provides PetroChina would pay a "fixed" price, Kelvion would carry the "risk of loss" until the exchangers were delivered, and any "changes that may have an effect on prices" would be approved through a

---

[3]  The relevant provision states

This Purchase Order shall be governed by and construed in accordance with the laws of the Province of Alberta *and* the Parties agree to accept and submit to the exclusive jurisdiction of the courts of the Province of Alberta.

App. 228, § 20.1 (emphasis added).

[4]  *See also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 644 (1985) (Stevens, J., dissenting); *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997).

Change Order. *See* App. 225, § 9.1; *id.* 226, § 10.1; *id.* 202, § 5. If any of those contractual terms apply to the disputed shipping charges, Kelvion's equitable claims are moot. *See Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Tr. Co. of Sapulpa*, 130 F.3d 950, 957–58 (10th Cir. 1997) (noting the "hornbook rule that quasi-contractual remedies such as [unjust enrichment] are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue"); *see also McCurdy Grp. v. Am. Biomed. Grp., Inc.*, 9 F. App'x 822, 827 (10th Cir. 2001) (unpublished) (collecting cases to establish that a plaintiff can assert quantum meruit in the face of an express contract only when the claim involves obligations outside its scope). As the district court correctly concluded, the Purchase Order and its interpretation are central to adjudicating Kelvion's claims and must be subject to the forum-selection clause.

Kelvion argues a forum-selection clause cannot apply if the contract containing the clause is raised only as a defense, rather than on the face of the complaint. But no such legal rule exists. *See, e.g.*, *MPVF Lexington Partners, LLC v. W/P/V/C, LLC*, 148 F. Supp. 3d 1169, 1179 (D. Colo. 2015) (A "forum selection clause can apply even when the contract at issue is raised only as a defense to the plaintiff's claims."). On the contrary, "a plaintiff cannot defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to

press, and of defendants to name in the suit." *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 679–80 (7th Cir. 2007) (internal quotation marks omitted).

Indeed, the rule Kelvion proposes would substantially impair the public policy purpose of forum-selection clause enforcement. "If forum selection clauses are to be enforced as a matter of public policy, that . . . policy requires that they not be defeated by artful pleading of claims." *Coastal Steel*, 709 F.2d at 203; *see also Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 220 (3d Cir. 2015); *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 21 (1st Cir. 2011). This public policy purpose is especially important where "claims grow out of the contractual relationship or if 'the gist' of those claims is a breach of that relationship." *BMR & Assocs., LLP v. SFW Capital Partners, LLC*, 92 F. Supp. 3d 128, 136 (S.D.N.Y. 2015). That Kelvion originally brought a claim for breach of contract and that its equitable claims effectively amount to the same is strong evidence of artful pleading to avoid enforcement of the forum-selection clause.

The parties anticipated claims arising directly from the Purchase Order and its interpretation would be subject to the forum-selection clause. That expectation should be given effect.

### C. Balancing of Public-Interest Factors

Having determined the forum-selection clause applies, we will "not consider arguments about the parties' private interests" and "may consider

arguments about public-interest factors only." *Atl. Marine*, 571 U.S. at 64. The district court's weighing is entitled to substantial deference when it has considered and reasonably balanced all relevant interest factors. *See Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1171 (10th Cir. 2009). Kelvion does not contend the district court incorrectly or improperly weighed any of the public-interest factors. We therefore conclude the district court did not abuse its discretion when it weighed the public-interest factors and dismissed the case for *forum non conveniens*.

## III. Conclusion

The judgment of the district court is AFFIRMED.