**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ELNA SEFCOVIC, LLC; WHITE RIVER
ROYALTIES, LLC; JUHAN, LP; ROY
ROYALTY, INC., individually and on
behalf of all others similarly situated,

     Plaintiffs - Appellees,

v.

TEP ROCKY MOUNTAIN, LLC,

     Defendant - Appellee.

-----------------------------

CHARLES DEAN GONZALES;
SUSANNAH GONZALES; TED L.
VAUGHAN; HILDA VAUGHAN,

     Objectors,

IVO LINDAUER; SIDNEY LINDAUER;
RUTH LINDAUER; DIAMOND
MINERALS,

     Intervenors - Appellants,

and

THE LAW OFFICES OF GEORGE A.
BARTON, PC,

     Movant - Appellee.
_____

No. 19-1121

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:17-CV-01990-MEH)**

_____

David G. Seely, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, Kansas (Thomas D. Kitch, Gregory J. Stucky, Ryan K. Meyer, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, Kansas; George Robert Miller, G. R. Miller, P.C., Durango, Colorado; and Nathan A. Keever, Dufford, Waldeck, Milburn & Krohn, LLP, Grand Junction, Colorado, with him on the briefs) for Intervenors–Appellants.

Christopher A. Chrisman, Holland & Hart LLP, Denver, Colorado (John F. Shepherd, P.C., Holland & Hart LLP, Denver, Colorado; George A. Barton and Stacy A. Burrows, Law Offices of George A. Barton, P.C., Overland Park, Kansas, with him on the brief), for Appellees.

_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

This appeal arises out of a class action contract dispute. Appellants intervened in the district court, seeking to dismiss the action for lack of federal subject matter jurisdiction. Through two separate motions to dismiss, the briefing from both parties confused the bounds of federal subject matter jurisdiction and conflated that concept with the doctrines of abstention and comity, and with matters of venue and forum. Despite this misdirection, the district court properly exercised jurisdiction and rebuffed appellants' attempts to unwind nearly eighteen months of class action litigation. We affirm.

## I.    BACKGROUND

Appellee-defendant TEP Rocky Mountain, LLC ("TEP") operates wells that produce natural gas in Colorado. These wells are subject to various leases or royalty

agreements under which the owners of such instruments receive a share of profits from the sale of natural gas.

Appellant-intervenors Ivo Lindauer, Sidney Lindauer, Ruther Lindauer, and Diamond Minerals LLC (the "Lindauers" or the "Intervenors"), are the representatives for a class of royalty owners who filed suit in 2006 in Colorado state court (the "*Lindauer* class" or "*Lindauer* litigation"), alleging that TEP had underpaid royalties on various leases and royalty agreements. In 2008, TEP and the *Lindauer* class entered into a settlement agreement (the "*Lindauer* SA") purporting to "resolve all class claims relating to past calculation of royalt[ies]" and to "establish certain rules to govern future royalty" payments. App. at 411.

The *Lindauer* SA declared that the state court would retain "continuing jurisdiction" to enforce provisions of the settlement related to "the description of past and future royalty methodologies." App. at 427–28. The state court also issued a judgment (the "stipulated judgment" or "consent decree") certifying the class and approving the *Lindauer* SA. This stipulated judgment concluded that the *Lindauer* SA was "fair, adequate and reasonable" and stated that the parties "shall take any and all steps necessary to implement the [*Lindauer* SA] according to its terms and the terms of [the stipulated judgment]." App. at 447, 448. Finally, the stipulated judgment included the following provision:

> Without affecting the finality of this Final Judgment in any way, this Court shall retain continuing jurisdiction of this action to address any issues concerning implementation of the Settlement Agreement and enforcing this Final Judgment.

3

App. at 449.

Approximately eight years passed, seemingly free of incident. But on July 18, 2017, a subset of the *Lindauer* class (the "*Sefcovic* class")[1] initiated this action against TEP in Colorado state court, alleging that TEP had calculated and paid royalties in a manner inconsistent with the *Lindauer* SA and contrary to the underlying royalty agreements. TEP removed the case to federal court on August 17, 2017. The parties engaged in discovery and ultimately reached a proposed class settlement. One year later, on August 16, 2018, the district court[2] issued an order preliminarily approving the settlement and permitting the notice to be mailed to the *Sefcovic* class members.

Less than a month later, on September 14, 2018, the Lindauers filed a "Motion to Enforce Court Order and Settlement Agreement" in Garfield County District Court—the Colorado state court that had entered the stipulated judgment in the *Lindauer* litigation. That motion made no mention of the federal action alleging breaches of the *Lindauer* SA—initiated fourteen months prior and having reached preliminary approval of a class settlement agreement. The state court initially ordered TEP to show cause why it should not be held in contempt for breaching the terms of

---

[1] The *Sefcovic* class is composed of parties to the *Lindauer* SA with leases and royalty agreements falling into four of thirteen categories created in the *Lindauer* litigation.

[2] The *Sefcovic* class and TEP consented to the Magistrate Judge presiding over this matter. We therefore refer to the Magistrate Judge's orders as those of the district court.

4

the *Lindauer* SA but subsequently stayed the proceedings to "await [the federal district court's] ruling on pending motions." App. at 1039–40.

On September 28, 2018, the Lindauers filed a motion to intervene in the federal district court proceeding. Before the district court ruled on the motion to intervene, the Lindauers filed a motion to dismiss, arguing the court lacked subject matter jurisdiction based on the stipulated judgment's clause retaining "continuing jurisdiction" in the state court. The district court then "dismissed [the action] without prejudice based on [its] independent assessment of subject matter jurisdiction" and largely because of the state court's retention of jurisdiction over the *Lindauer* SA. App. at 1052. It therefore dismissed the Lindauers' motion to intervene as moot and vacated the fairness hearing on the proposed *Sefcovic* SA. App. at 1052–53.

TEP filed a motion to reconsider, arguing the district court's jurisdiction was proper despite the state court's retention of jurisdiction. The Lindauers filed a renewed motion to intervene, which the district court granted, and a renewed motion to dismiss, arguing again that the district court lacked subject matter jurisdiction and/or should have abstained from presiding over the case under *Younger* or *Colorado River* abstention.

The district court granted TEP's motion to reconsider and reinstated the case on January 23, 2019. In doing so, the district court clarified that in its original order it believed "dismissal would be appropriate here under principles of comity and wise judicial administration . . . akin to the doctrine set forth in *Colorado River*." App. at 1084. The court explained that

5

> (1) courts are authorized to retain jurisdiction over settlement agreements, and (2) when a court has done so, and that jurisdiction is explicitly (or implicitly under the totality of circumstances) exclusive, then (3) the doctrine of comity permits a court, even in the presence of subject matter jurisdiction, to defer to the settlement court in cases requiring the interpretation and enforcement of the settlement agreement.

App. at 1086 (footnote omitted). But because this doctrine is non-jurisdictional and thus "not an absolute obligation," the district court determined that dismissal was inappropriate for a variety of reasons, including that Intervenors were aware of this litigation but opted to intervene only after preliminary approval of the settlement agreement. App. at 1086.

The district court subsequently approved the *Sefcovic* SA,[3] and Intervenors timely appealed the district court's determination that it possessed subject matter jurisdiction.

## II.    DISCUSSION

In seeking dismissal of this action below, Intervenors relied primarily on two similar provisions appearing in the *Lindauer* SA and the stipulated judgment adopted by the state court. Those provisions declare that the state court retains "continuing jurisdiction" to enforce the *Lindauer* SA and the stipulated judgment. Intervenors argued below, and they maintain on appeal, that those provisions vest "exclusive jurisdiction over the parties and subject matter" in the state court. Aplt. Br. at 17.

---

[3] The district court approved the *Sefcovic* SA over the objections of several class members. Those objections form the basis of a separate appeal (Case No. 19-1120) heard by the same panel and resolved by a separate Order and Judgment issued concurrently with this Opinion.

Because many of their arguments rest in whole or in part on Intervenors' erroneous assertion that the district court was without subject matter jurisdiction, we begin with a discussion of subject matter jurisdiction. We then proceed to distinguish that concept from doctrines of abstention and matters of venue and forum, and conclude by applying these concepts to this appeal.

### A.    *Subject Matter Jurisdiction*

"Subject matter jurisdiction defines the court's authority to hear a given type of case." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)). "*Only Congress* may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) (emphasis added) (citing U.S. Const. Art. III, § 1). Thus, the scope of a federal court's subject matter jurisdiction is governed exclusively by acts of Congress.[4] And when Congress grants subject matter jurisdiction, no other entity— not the litigants and not the states—can divest a federal court of the same.[5] *See*

---

[4] Congress, in turn, is constrained in the types of matters it can authorize the federal courts to adjudicate by Section 2 of Article III of the Constitution.

[5] Nor can a state court achieve the same result by enjoining federal proceedings. *See Donovan v. City of Dallas*, 377 U.S. 408, 412–13 (1964) ("While Congress has seen fit to authorize courts of the United States to restrain state-court proceedings in some special circumstances, it has in no way relaxed the old and well-established judicially declared rule that state courts are completely without power to restrain federal-court proceedings in in personam actions . . . ." (footnotes omitted)). One practical exception exists when parallel state and federal "suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation." *Princess Lida v. Thompson*, 305 U.S. 456, 466 (1939). Because only one tribunal can exercise control over the subject property, the rule, "applicable to both federal and state courts," is that "the court first

7

*Marshall v. Marshall*, 547 U.S. 293, 313 (2006) ("Jurisdiction is determined 'by the law of the court's creation and cannot be defeated by the extraterritorial operation of a [state] statute . . . , even though it created the right of action.'" (alterations in original) (quoting *Tenn. Coal, Iron, & R.R. Co. v. George*, 233 U.S. 354, 360 (1914))); *Ry. Co. v. Whitton's Adm'r*, 80 U.S. (13 Wall.) 270, 286 (1871) ("Whenever a general rule as to property or personal rights . . . is established by State legislation . . . the jurisdiction of the [federal] court in such a case is not subject to State limitation."); *Odom v. Penske Truck Leasing Co., L.P.*, 893 F.3d 739, 742 (10th Cir. 2018) ("Congress alone defines the lower federal courts' subject-matter jurisdiction.").[6]

---

assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other." *Id.* Both this action and the *Lindauer* action were brought in personam.

[6] *See also VanDesande v. United States*, 673 F.3d 1342, 1350 (Fed. Cir. 2012) (citing "the well-established rule that neither a court nor the parties has the power to alter a federal court's statutory grant of subject matter jurisdiction"); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1315 (9th Cir. 1982) ("[S]tate law may not control or limit the diversity jurisdiction of the federal courts. The district court's diversity jurisdiction is a creature of federal law under Article III and 28 U.S.C. § 1332(a). Pursuant to the supremacy clause, [§] 1332(a) preempts any contrary state law."); *Markham v. City of Newport News*, 292 F.2d 711, 716 (4th Cir. 1961) ("[A] court, in determining its own jurisdiction, must look to the constitution and laws of the sovereignty which created it. The laws of a state cannot enlarge or restrict the jurisdiction of the federal courts or those of any other state."); *McGarry v. Lentz*, 13 F.2d 51, 52 (6th Cir. 1926) ("Obviously, no state Legislative can regulate, limit, or control the jurisdiction of the federal courts, nor can the laws of any state preclude resort to the federal courts, nor confer exclusive jurisdiction upon a designated state court, in a class of cases of which the federal courts of equity have theretofore been accustomed to assume jurisdiction.").

That many of Congress's statutory grants of subject matter jurisdiction operate to create concurrent jurisdiction between state and federal courts is of no significance, at least so far as subject matter jurisdiction is concerned. Indeed, the Supreme Court "has repeatedly held that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)); *see also Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964) ("[W]here the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other." (quoting *Princess Lida v. Thompson*, 305 U.S. 456, 466 (1939))).

### B.    *Abstention*

Nevertheless, the Supreme Court has counseled that a district court may, and sometimes must, abstain from hearing a matter that otherwise finds a statutory basis for subject matter jurisdiction. *See Exxon Mobil*, 544 U.S. at 292 ("Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation."). But when cases present circumstances implicating these doctrines, no question is raised as to the court's subject matter jurisdiction.[7] Rather, when a federal court may or

---

[7] In its first order dismissing the case for lack of subject matter jurisdiction, the district court indicated its belief that the Supreme Court and this court "routinely"

9

must abstain from exercising its unquestioned subject matter jurisdiction over a dispute, it does so pursuant to a power derived from the "historic discretion exercised by federal courts 'sitting in equity.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 718 (1996).[8] But because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," the Supreme Court has repeatedly cautioned that "[a]bstention from the exercise of federal jurisdiction is the exception, not the

find that a district court "lacks" subject matter jurisdiction when *Younger* abstention applies. App. at 1044. Although the mandatory nature of *Younger* abstention is concededly confusing in this respect, we have taken care to clarify—in a case cited by the district court—that "*Younger* is a doctrine of abstention [that] . . . differs from a case in which the district court is barred at the outset from exercising its jurisdiction." *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1230 n.8 (10th Cir. 2013).

For the proposition that the Supreme Court uses jurisdiction interchangeably with abstention, the district court also cited to *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). But *Exxon Mobil* was not decided on abstention. Rather, *Exxon Mobil* involved the *Rooker-Feldman* doctrine, a principle that gives effect to the fact that Congress has authorized only the Supreme Court to exercise appellate review of state court judgments. *See Exxon Mobil*, 544 U.S. at 291 ("*Rooker* and *Feldman* exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority . . . ."). By enacting 28 U.S.C. § 1257, Congress placed a limitation on the subject matter jurisdiction of the lower federal courts to review state court judgments. Thus, when a federal action presents *Rooker-Feldman* circumstances, a district court is in fact without subject matter jurisdiction to adjudicate it.

[8] Due to this equitable origin, a federal court has "the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996). In an action for money damages that otherwise implicates the concerns underlying a particular abstention doctrine, a district court may do no more than stay the federal litigation while it awaits the state court's resolution of the state proceeding. *See id.* at 730–31.

rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976).

## C. *Private Agreements Preselecting Particular Fora or Venue*

Finally, when a case finds subject matter jurisdiction and further does not implicate interests underlying the abstention doctrines, a federal district court may yet be required to give effect to the parties' prior agreement that any disputes between them be litigated in a particular venue or forum. An agreement of this sort has absolutely no bearing on a federal court's subject matter jurisdiction. Rather, when parties select in advance the exclusive venue and/or forum for the resolution of future disputes, and one party timely seeks enforcement of that agreement, federal courts give effect to these provisions through a transfer of venue (when the provision points to a different federal forum) or dismissal without prejudice under the doctrine of *forum non conveniens* (when the provision identifies a state or foreign forum).[9] *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59–60 (2013).

---

[9] Appellees incorrectly suggest that the doctrine of *forum non conveniens* is limited to circumstances involving foreign courts or law. In support, appellees rely exclusively on cases that do not involve a purported forum selection clause. But Intervenors invoke *forum non conveniens* as a mechanism to enforce what they believe amounts to a forum selection clause—"the appropriate way to enforce a forum-selection clause pointing to a state . . . forum." *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). When used for this purpose, the *forum non conveniens* analysis relied on by appellees is "adjust[ed]" in significant respects, and the forum selection clause is "given controlling weight in all but the most exceptional cases." *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

### D.     *Application*

It is beyond reasoned dispute that the district court possessed subject matter jurisdiction in this case—Congress clearly authorized the district court to adjudicate this matter when it enacted the Class Action Fairness Act, 28 U.S.C. § 1332(d).[10] And, as the above principles dictate, the Colorado state court—no matter the language in the stipulated judgment approving the *Lindauer* SA—could not divest the federal district court of subject matter jurisdiction. Thus, contrary to the apparent misperceptions of both parties, the state and federal courts enjoy concurrent jurisdiction over this matter. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1557 (2017) (explaining that concurrent jurisdiction is a well-known term of art long employed by Congress and the courts to refer to subject matter jurisdiction); *id.* at 1553 (distinguishing venue provision of Federal Employers' Liability Act (FELA) from jurisdiction provision, and holding that the state and federal courts have concurrent jurisdiction over FELA claims).

Accordingly, the only inquiries remaining in this appeal are (1) whether the district court, pursuant to a doctrine of abstention or comity, should have stayed or dismissed this action in favor of the state court litigation, and (2) whether the district

---

[10] Intervenors do not dispute that this case meets the requirements of § 1332(d). But for the first time at any stage of this litigation, Intervenors assert in their reply brief that removal was untimely because TEP did not remove the *Lindauer* litigation to federal court in 2006, implicitly suggesting that TEP's failure to remove the *Lindauer* litigation precludes their removal of this action. This argument is waived, but even if it were not it would fail because this case and the *Lindauer* action are separate and distinct, and TEP was not barred from removing this case because it declined to remove *Lindauer*.

12

court abused its discretion in denying Intervenors' motion to dismiss based on *forum non conveniens*. We consider each question in turn.

## 1. *Younger* Abstention

The Intervenors urged the district court to abstain pursuant to the doctrines announced in *Younger v. Harris*, 401 U.S. 37 (1971), and *Colorado River*, 424 U.S. 800. On appeal, perhaps recognizing the broad discretion accorded a district court in deciding whether to abstain under *Colorado River*, the Intervenors abandon any reliance on that doctrine in favor of their argument that the district court was required to abstain under *Younger*. "We review de novo the district court's decision on whether to abstain under *Younger*." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1221 (10th Cir. 2018).

*Younger* provides that a federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). It applies to three categories of state cases: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 73 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 367–68 (1989)). Only "exceptional" circumstances merit *Younger* abstention, however, and in the ordinary case, the default rule applies: that "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the

13

Federal court having jurisdiction." *Id.* (alterations in original) (quoting *Colorado River*, 424 U.S. at 817).

Category one—state criminal prosecutions—clearly does not apply to the state civil case. Nor does category two; the Supreme Court clarified in *Sprint Communications* that *Younger* extends to civil enforcement proceedings that are "akin to criminal prosecution." *Sprint Commc'ns*, 571 U.S. at 79 ("Our decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects.' Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." (citations omitted) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975))).

That leaves category three: "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 73. Before turning to the Intervenors' arguments in support of *Younger* abstention under this category, we first review cases exhibiting this class's paradigm characteristics. "The prototypical examples of situations falling within this third category are *Juidice v. Vail*, 430 U.S. 327 (1977), and *Pennzoil [Co. v. Texaco Inc.*, 481 U.S. 1 (1987)]." *Aaron v. O'Connor*, 914 F.3d 1010, 1016 (6th Cir. 2019).

In *Juidice*, a state court entered a default judgment against Vail, who failed to satisfy the judgment and later failed to appear at a hearing to "show cause why he should not be punished for contempt." 430 U.S. at 329. Juidice, a state court judge, entered orders holding Vail in contempt and ordering his arrest. *Id.* at 330. Vail and a

14

group of coplaintiffs also subject to state contempt proceedings brought suit in federal district court "to enjoin . . . the use of the statutory contempt procedures authorized by New York law and employed by [Juidice and other state court judges]." *Id.* The federal district court "permanently enjoin[ed] the operation of [those procedures]." *Id.* at 331.

The Supreme Court held that the federal district court should have abstained under *Younger* based on the "State's interest in the contempt process, through which it vindicates the regular operation of its judicial system" and because "federal-court interference with the State's contempt process" would be "'an offense . . . likely to be every bit as great as it would be were this a criminal proceeding.'" *Id.* at 335, 336 (quoting *Huffman*, 420 U.S. at 604). "The contempt power lies at the core of the administration of a State's judicial system," the Court explained, *id.* at 335, and interference with this process would both disrupt "the legitimate activities of the Stat[e]" and could be interpreted as "reflecting negatively upon the state courts' ability to enforce constitutional principles," *id.* at 336 (alteration in original) (first quoting *Younger*, 401 U.S. at 44; then quoting *Huffman*, 420 U.S. at 604).

In *Pennzoil*, after receiving an adverse $11 billion judgment in Texas state court, Texaco filed an action in federal district court "alleg[ing] that the Texas proceedings violated rights secured to Texaco by the Constitution and various federal statutes." *Pennzoil Co.*, 481 U.S. at 6. The district court determined Texaco had a "clear probability of success" and accordingly issued a preliminary injunction barring Pennzoil from attempting to collect its judgment through state court enforcement

15

processes. *Id.* at 8. "The principal issue," the Court explained, was "whether a federal district court lawfully may enjoin a plaintiff" who prevailed in state trial court "from executing the judgment in its favor." *Id.* at 3.

The Supreme Court held that the reasoning of *Juidice* required the district court to abstain under *Younger*. *Id.* at 13.

> Both *Juidice* and this case involve challenges to the processes by which the State compels compliance with the judgments of its courts. Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained.

*Id.* at 13–14 (footnote omitted).

Thus, both *Juidice* and *Pennzoil* involved requests to directly or indirectly thwart state court compliance processes. *See Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) ("*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly."); *see also Zeeco, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-CV-384-JED-FHM, 2017 WL 6539504, at *2 (N.D. Okla. Dec. 21, 2017) (unpublished) ("What *Younger*, *Juidice*, and *Pennzoil* have in common is that they all involved plaintiffs filing separate federal suits in an attempt to enjoin ongoing state proceedings.").

Here, there is no such interference. After the district court preliminarily approved the *Sefcovic* SA,[11] Intervenors moved in state court for an order requiring

_____

[11] As the district court noted, counsel for the Intervenors admitted "that, although he was aware of this lawsuit within months of its filing, he decided to

16

TEP to "show cause why it should not be held in contempt of the [*Lindauer* SA]." App. at 705. Intervenors argue that because this motion could eventually result in "contempt proceedings under" Colorado law, the district court should have abstained pursuant to the third *Younger* category. Aplt. Reply Br. at 21. In so arguing, Intervenors suggest that the mere presence of contempt proceedings in state court required the district court to abstain under *Younger*.

But *Younger* does not mechanically require abstention whenever a state court conducts contempt proceedings in a related matter. Rather, as the above cases show, the "exceptional circumstances" requiring abstention under *Younger*'s third category are present only when the relief requested from the federal court would enjoin or otherwise interfere with such proceedings. *See Columbian Fin. Corp. v. Stork,* 811 F.3d 390, 393 (10th Cir. 2016) ("*Younger* requires federal courts to refrain from ruling when it could interfere with ongoing state proceedings."); *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (stating

---

monitor what the outcome of the case would be, in order to determine what action would be [in] his clients' best interest." App. at 1088. After preliminary approval of the settlement agreement in this action, Intervenors first initiated contempt proceedings in state court, omitting any reference to the federal litigation in their motion for an order to show cause. In this regard, this case presents the opposite of the paradigmatic *Younger* scenario in which a litigant requests injunctive relief from a federal court to thwart the consequences of its loss in state court.

We hasten to add that TEP is not blameless with respect to litigation gamesmanship. Upon removal, TEP did not apprise the federal district court that the *Lindauer* SA was approved by a stipulated judgment that contained at least some indication the state court contemplated a continuing role in the settlement's enforcement.

*Younger* abstention is only appropriate if "the federal action would have the practical effect of enjoining the state proceedings").

To be sure, *Juidice* tells us that contempt proceedings are "uniquely in furtherance of the state courts' ability to perform their judicial functions." *See Sprint Commc'ns*, 571 U.S. at 78. But Intervenors have not articulated, and we cannot discern, any argument that the relief requested from the district court—approval of the class settlement agreement—operates to enjoin or in any way interfere with the state court's ability to pursue contempt proceedings against TEP. Indeed, when pressed at oral argument, counsel for the Intervenors conceded that the "the federal court d[id not do] anything to enjoin the state court from proceeding with [the contempt] motion." Oral Argument at 15:01–15:16. Nevertheless, counsel argued that *Younger* abstention applied because the federal court "exercised jurisdiction over the subject matter and entered an order that amended—effectively amended—the *Lindauer* settlement agreement." *Id.* Although this assertion may raise concerns relevant to the district court's permissive decision to defer to the state court's concurrent jurisdiction, it is insufficient to mandate *Younger* abstention. Stated simply, the "exceptional circumstances" requiring a court to abstain from exercising its subject matter jurisdiction are not present every time a federal court is asked to approve a private settlement agreement that resolves uncertainty flowing from an earlier settlement agreement resolving state court litigation. *See Sprint Commc'ns*, 571 U.S. at 78 ("[O]nly exceptional circumstances . . . justify a federal court's refusal to decide a case in deference to the States." (first alteration in original) (quoting *New*

18

*Orleans Pub. Serv., Inc.*, 491 U.S. at 368)). Because Intervenors have not established that the district court's orders interfered with a civil proceeding "uniquely in furtherance of the state courts' ability to perform their judicial functions," the district court properly found that *Younger* abstention did not apply. *See id.*

## 2. *Forum Non Conveniens*

Finally, Intervenors suggest the district court should have dismissed this action under the doctrine of *forum non conveniens* because the *Lindauer* SA and/or its companion stipulated judgment embodied the parties' agreement to litigate their disputes exclusively in state court. We first review whether the *Lindauer* SA contains an exclusive forum selection provision[12] before analyzing the effect of similar language in the state court's stipulated judgment.

The *Lindauer* SA provides that the state court possesses "continuing jurisdiction" to enforce provisions of the settlement related to "the description of past and future royalty methodologies." App. at 427–28. Under settled Colorado and Tenth Circuit law,[13] this language does not create a mandatory forum selection clause.

---

[12] We review the interpretation of a forum selection clause de novo, but review for abuse of discretion a district court's resolution of a motion to dismiss on *forum non conveniens* grounds. *Kelvion, Inc. v. PetroChina Can. Ltd.*, 918 F.3d 1088, 1092 (10th Cir. 2019).

[13] Because the *Lindauer* SA contains a choice-of-law provision declaring that Colorado law govern its interpretation, we apply Colorado law to interpret the forum selection provision. *See Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 430 (10th Cir. 2006) (giving effect to a choice-of-law provision in a contract for the purpose of interpreting its forum selection clause). But we cite to Tenth Circuit cases where

19

We have stated the general rule in interpreting forum selection clauses as follows:

> where venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified [in a forum selection clause], the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive.

*K & V Sci. Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 499 (alterations in original) (quoting *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992)). Thus, our principal inquiry is whether the parties intended venue in the state court to be permissive or mandatory. *See Vanderbeek v. Vernon Corp.*, 25 P.3d 1242, 1247 (Colo. App. 2000), *aff'd*, 50 P.3d 866 (Colo. 2002) ("Contract language mandating suit in a different forum requires dismissal whereas language merely permitting suit in such forum does not."); *K & V Sci. Co.*, 314 F.3d at 498 ("This court and others have frequently classified forum selection clauses as either mandatory or permissive." (internal quotation marks omitted)).

To find indicia of exclusivity, Colorado courts do not require any specific incantation. *See Vanderbeek*, 25 P.3d at 1248 ("No specific language is required for a provision to be mandatory. The clause need only contain clear language showing that

---

relevant because "there are no material discrepancies between Colorado law" and federal law with regard to the validity and interpretation of forum selection clauses. *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 320 (10th Cir. 1997); *see Vanderbeek v. Vernon Corp.*, 25 P.3d 1242, 1247 (Colo. App. 2000), *aff'd*, 50 P.3d 866 (Colo. 2002) (citing to both Tenth Circuit and Colorado case law).

the appropriate forum consists of that which has been designated."). For example, in *Vanderbeek*, the court considered a forum selection clause stating, "The Partners hereby expressly agree to submit any dispute or action arising between the Partners . . . to the jurisdiction of the state or federal courts found within the State of Delaware [or various other specified forums]." *Id.* at 1247. Although the clause did not include the words "shall," "exclusive," or "only," the court concluded that "the language reflects an effort of all of the partners to agree to the most convenient, reasonable, and mutually agreeable place for any lawsuit which may arise between or among them." *Id.* at 1247–48.

The putative forum selection clause in the *Lindauer* SA falls squarely outside the general rule. Although the provision specifies that the state court have "continuing jurisdiction" to enforce a portion of the *Lindauer* SA, it neither requires that "all" actions be brought there, nor places any restriction on the parties' ability to bring suit elsewhere. *See id.* at 1248 ("[P]ermissive forum selection clauses *authorize* suit in the designated forum, but do not *prohibit* litigation elsewhere." (emphasis added)). In short, the lack of any language suggesting exclusivity confirms that the parties bargained for a permissive, but not mandatory, forum selection clause.

But Intervenors argue for a different result because they sought enforcement not only of a forum selection provision in a private agreement, but also of a similar provision in the state court's judgment approving the *Lindauer* SA. That state court judgment—which, the parties agree, amounts to a stipulated judgment or consent decree—declares that "this Court shall retain continuing jurisdiction of this action to

21

address any issues concerning implementation of the Settlement Agreement and enforcing this Final Judgment." App. at 449. Intervenors urge that the two provisions be read *in pari materia*, apparently arguing that language insufficient to establish an exclusive forum selection clause in a private agreement does precisely that when adopted by a court as part of a consent decree. We disagree.

The Supreme Court has explained that "[c]onsent decrees and orders have attributes both of contracts and of judicial decrees." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236 n.10 (1975). "Because of this dual character, consent decrees are treated as contracts for some purposes but not for others." *Id.* For enforcement purposes, however, the Court has directed that "a consent decree or order is to be construed . . . basically as a contract." *Id.* at 238. And by asking the district court to dismiss the action under *forum non conveniens* based on the consent decree, Intervenors undeniably sought "enforcement" of the jurisdiction-retention provision.

Our conclusion that the retention of jurisdiction provision be interpreted like an ordinary contract is bolstered by the fact that the state court merely adopted a proposed judgment jointly drafted by the parties and submitted alongside the settlement agreement. Indeed, the Intervenors relied on this fact below in urging the district court to find indicia of exclusivity and to hold the parties to their agreement:

> The parties reinforced the mandatory nature of their agreement that the Garfield County District Court would have jurisdiction over the *Lindauer* Settlement Agreement by attaching to that agreement the proposed form of judgment, in which the Garfield County District Court expressly retained

22

> jurisdiction. The court ultimately adopted that [proposed] form of judgment and retained jurisdiction.

App. at 522 n.3 (record citations omitted). Thus, by the Intervenors' own admission, the *parties* bargained for and drafted both provisions. We therefore see no reason to deviate from a contractual inquiry focusing on whether the parties intended that the provision be permissive or mandatory. And this conclusion is dispositive because, as with the provision in the *Lindauer* SA, the provision in the stipulated judgment contains no indication that the parties intended to bind themselves to litigate exclusively in the state court as required by Colorado law.

In summary, because neither the forum selection clause in the *Lindauer* SA nor the related language in the stipulated judgment is mandatory, the district court did not abuse its discretion in declining to dismiss this case under the doctrine of *forum non conveniens*.

### III. CONCLUSION

For the reasons articulated, the district court properly determined that it possessed subject matter jurisdiction over this action, correctly declined to abstain under *Younger*, and rightly found "no indication that the parties contemplated [the state court] to [be] the exclusive forum" in which to litigate their contractual disputes. App. at 1089. The judgment is **AFFIRMED.**

23