**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**September 29, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ATAIN SPECIALTY INSURANCE
COMPANY,

    Plaintiff-Counter-Defendant -
Appellee,

v.

EAGLE'S POINTE, LLC,

    Defendant-Counterclaimant -
Appellant,

and

MATTHEW HANCOCK, individually
and on behalf of the Estate of Dennis
Hancock,

    Defendant.

No. 24-3199
(D.C. No. 2:23-CV-02400-JWB)
(D. Kan.)

_____

## ORDER AND JUDGMENT*
_____

Before **HARTZ**, **TYMKOVICH**, and **FEDERICO**, Circuit Judges.

_____

    * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

    After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

_____

After being sued in Kansas state court, Eagle's Pointe, LLC asked its insurer, Atain Specialty Insurance Company, for coverage. Atain declined to offer coverage and instead filed a declaratory judgment action against Eagle's Pointe in federal district court. Finding that the underlying state lawsuit fell within the relevant insurance policy's habitability exclusion, the district court issued a declaration that Atain had no duty to defend or indemnify Eagle's Pointe. We agree with the district court's thorough and well-reasoned order. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

In December 2022, Dennis Hancock (Dennis) passed away in his apartment. According to state records, the cause of his death was "environmental hypothermia" due to a "poorly or non-heated house during cold weather." Aplt. App. II at 174. Soon after, Matthew Hancock (Hancock), Dennis's son and the executor of his estate, filed a wrongful death lawsuit in the state district court for Johnson County, Kansas. Hancock alleged that Dennis's landlord, Eagle's Pointe, had failed to maintain the furnace and heat in Dennis's apartment.

2

Hancock alleged two claims sounding in negligence. In Count I, Hancock alleged that Eagle's Pointe breached its duty "to act with the requisite degree of care necessary to not injure or harm Dennis" in six ways:

   a. Failing to properly maintain the furnace in Dennis[]'s apartment;

   b. Failing to properly inspect the furnace unit in [Dennis's] apartment;

   c. Failing to properly repair the furnace in [Dennis's] apartment;

   d. Failing to adequately supervise its employees and/or agents while they inspected and/or maintained and/or failed to properly repair the furnace unit;

   e. Failing to warn Dennis [] of the condition of [the] furnace unit in his apartment and

   f. In all other manners to be identified and discovered through the course of discovery and litigation in this matter.

*Id.* at 33. In Count II, Hancock alleged that Eagle's Pointe breached its duties to "make [Dennis's] apartment reasonably safe" and to "act in a reasonable, cautious and prudent fashion so as to prevent Dennis . . . from being injured." *Id.* at 34. Hancock asserted that Eagle's Pointe breached these duties in the same six ways it breached the duty alleged in Count I. *Id.*

When Hancock first gave notice of his intent to sue, Eagle's Pointe contacted Atain to request insurance coverage. Specifically, Eagle's Pointe requested that Atain defend it from, and indemnify it against, Hancock's claims. Atain disclaimed coverage. Once Hancock formally filed suit, Eagle's Pointe repeated its request, and Atain again disclaimed coverage. Atain

contended that it had no obligation to provide coverage because Hancock's claims fell within the relevant insurance policy's habitability exclusion. In particular, Atain asserted that the claims fell within the following policy language:

> This insurance does not apply and there shall be no duty to defend or indemnify any insured for any . . . "suit" . . . demand or cause of action arising, in whole or in part, from any of the following:
>
> 1. Any matter that pertains to habitability including, but not limited to, any of the following:
>
>                     * * *
>
>    g.  Any allegations or claims under common law; or
>
>    h.  Any other claim that is related to habitability, including but not limited to sanitation, health, safety and all other matters that make a premises habitable or livable for human beings.

Aplt. App. I at 59.

Atain then sought judicial approval of its position by filing a declaratory judgment action in federal district court. Atain asked the district court for a declaration that it did not have a duty to defend Eagle's Pointe from Hancock's suit. Eagle's Pointe responded by counterclaiming for breach of contract and for the opposite declaration. The parties filed cross-motions for summary judgment, which the district court resolved in Atain's favor. The district court concluded that, even though Hancock did not plead any express habitability claims, Hancock's claims were related enough to habitability issues for the exclusion to apply. For this reason, the

4

district court declared that Atain had no duty to defend or indemnify Eagle's Pointe. This appeal followed.

## II

We review a grant of summary judgment de novo. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015). Because the parties filed cross-motions for summary judgment, we must draw inferences in favor of Eagle's Pointe, the party that did not prevail. *Allen v. Sybase, Inc.*, 468 F.3d 642, 649 (10th Cir. 2006). If there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law, then summary judgment is appropriate. *Id.*

"Under Kansas law, an insurance policy constitutes a contract, and the interpretation of a contract is a question of law." *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1233 (10th Cir. 2015) (citing *AMCO Ins. Co. v. Beck*, 929 P.2d 162, 165 (Kan. 1996)). Like we would for any other contract, we construe insurance policies "to give effect to the intention of the parties." *Cath. Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992). In doing so, we take the perspective of a reasonable insured. *Liggatt v. Emp'rs Mut. Cas. Co.*, 46 P.3d 1120, 1125–26 (Kan. 2002) (quoting *First Fin. Ins. Co. v. Bugg*, 962 P.2d 515, 519 (Kan. 1998)). If there is any ambiguity in the policy language, the policy is construed in favor of the insured. *Id.* If there is no ambiguity, the plain language of the policy controls. *BancInsure*, 796

F.3d at 1233 (citing *Liggatt*, 46 P.3d at 1125). Because we deal here with an exclusion, Atain as the insurer bears the burden of showing that the exclusion applies. *Speth v. State Farm Fire & Cas. Co.*, 35 P.3d 860, 862 (Kan. 2001).

## III

## A

The focus of this appeal is whether Hancock's claims fall within the applicable habitability exclusion. To answer that question, we start with the language of the exclusion, which excepts from coverage "[a]ny matter that pertains to habitability" and "[a]ny other claim that is related to habitability." Aplt. App. I at 59. To a reasonable insured – a reasonable landlord in this case – such language is unambiguous.

The obligation to maintain habitable premises has a long pedigree in the landlord-tenant context. In 1974, the Kansas Supreme Court recognized the implied warranty of habitability. *Steele v. Latimer*, 521 P.2d 304, 309–10 (Kan. 1974). It held that, under the implied warranty, landlords who lease a residential property to a tenant have a duty to ensure the property is "suitable for human habitation." *Id.* at 307. The specific requirements of habitability were eventually codified in Kansas Statute § 58-2553(a), leaving no doubt about the nature of a landlord's obligations. *Washburn S. Apartments LLC v. Hession*, 570 P.3d 1268, 1273 (Kan. Ct. App. 2025). Any

reasonable landlord should be aware of, and understand "habitability" to refer to, their obligation to ensure their residential properties are suitable for human habitation.

Even if a reasonable landlord were ignorant of their duties under Kansas law, the habitability exclusion in the policy issued by Atain defines "habitability." The exclusion provides that "[a]ny other claim that is related to habitability" includes those related to "matters that make a premises habitable or *livable for human beings*." Aplt. App. I at 59 (emphasis added). This is synonymous with the definition of habitability under Kansas law as "suitab[ility] for human habitation." *Steele*, 521 P.2d at 307. Thus, as used in the exclusion, "habitability" refers to landlords' legal obligation to provide livable premises.

That said, the habitability exclusion in the policy stretches further than claims under Kansas law for violation of the implied warranty of habitability or § 58-2553(a). For one, the exclusion is not limited to state law because it explicitly covers "violations of any federal . . . law." Aplt. App. I at 59. More importantly, the exclusion applies to "any" matter or claim that "pertains to" or "is related to" habitability. *Id.* "Any," "pertains to," and "related to" are broad terms. *See Kelvion, Inc. v. PetroChina Can. Ltd.*, 918 F.3d 1088, 1093 (10th Cir. 2019). Given this broad language, we conclude that the exclusion covers all claims dealing with the subject matter of

7

habitability, even if those claims are not expressly premised on violations of the implied warranty of habitability or related Kansas statutes.

With that construction of the policy language, there is no doubt that Hancock's claims fall under the habitability exclusion. Hancock does not plead claims for breach of the implied warranty of habitability or related statutory violations. Aplt. App. II at 33–35. Still, both of his claims are based on the subject matter of habitability. Hancock's claims are all related to the alleged failure by Eagle's Pointe to provide heat and maintain the furnace in Dennis's apartment. *Id.* And Kansas law specifically codifies the provision of heat and the maintenance of heating appliances as habitability obligations. Kan. Stat. § 58-2553(a)(3), (5). As such, Hancock's claims fall within the scope of matters excluded from coverage under the policy.

In arguing otherwise, Eagle's Pointe asserts that Atain must provide coverage because Hancock could succeed on his claims even without a finding that Eagle's Pointe violated its duties to provide habitable premises. Since that is possible, says Eagle's Pointe, the exclusion cannot apply. Or equivalently, the exclusion applies only if a claim, regardless of how it is labeled, necessarily requires a violation of the implied warranty or § 58-2553(a) for liability. The problem with this interpretation is that it would effectively limit the exclusion to breaches of the implied warranty of

8

habitability and violations of § 58-2553(a). However, that narrow interpretation conflicts with the broad language in the policy's exclusion.

Separately, Eagle's Pointe cites to an unpublished Sixth Circuit decision also involving a habitability exclusion, *Hamilton Specialty Insurance Company v. Transition Investment, LLC*, 818 F. App'x 429 (6th Cir. 2020), as support for its position. But *Hamilton* is readily distinguishable. The *Hamilton* exclusion is more limited than the exclusion in this case because it applies only to statutory and regulatory violations. *Id.* at 431. In contrast, the habitability exclusion here broadly applies to "claims under common law" and "[a]ny other claim that is related to habitability." Aplt. App. I at 59. *Hamilton* also turned on the application of Michigan law requiring courts to narrowly construe "arising out of" and similar language. *Hamilton*, 818 F. App'x at 435. The policy here is governed by Kansas law, which does not contain a similar rule.

Accordingly, we conclude that the habitability exclusion in this case unambiguously excludes coverage of Hancock's claims. To be clear, though, we are deciding only that the insurance policy that Atain issued to Eagle's Pointe does not provide coverage for the lawsuit filed by Hancock. We do not decide, and express no view on, the merits of Hancock's lawsuit against Eagle's Pointe, including whether Eagle's Pointe acted negligently by failing to provide heat or maintain the furnace in Dennis's apartment.

**B**

Before concluding, we briefly address the argument that Atain did not properly investigate Hancock's claims before denying coverage. Op. Br. at 8. While Eagle's Pointe alludes to this argument in its opening brief, it cites no authority establishing that Atain had any duty to investigate, nor does it develop the argument in any meaningful way. Since "[a]rguments inadequately briefed in the opening brief are waived," we decline to consider whether Atain breached some duty to investigate. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998).

In any case, to the extent that Eagle's Pointe suggests further factual development might reveal that the habitability exclusion does not apply, we disagree. It is apparent from the face of Hancock's state petition that his claims are inextricably intertwined with habitability.

AFFIRMED.

Entered for the Court

Richard E.N. Federico
Circuit Judge