PRECEDENTIAL


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 19-2968 and 19-2993
_____

PDX NORTH, INC.;

SLS DELIVERY SERVICES, INC.
(Intervenor in District Court)


v.

COMMISSIONER NEW JERSEY DEPARTMENT OF
LABOR AND WORKFORCE DEVELOPMENT

PDX North, Inc.,
            Appellant in No. 19-2968

SLS Delivery Services, Inc.,
            Appellant in No. 19-2993


_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-15-cv-07011)
District Judge: Honorable Brian R. Martinotti

_____

Argued: April 15, 2020

Before: CHAGARES, SCIRICA, and ROTH, *Circuit Judges*

(Filed: October 22, 2020)

Allison L. Hollows
Fox Rothschild
101 Park Avenue
17th Floor
New York, NY  10178

Jack L. Kolpen
Corinne L. McCann Trainor [ARGUED]
Ian D. Meklinsky
Fox Rothschild
997 Lenox Drive
Princeton Pike Corporate Center, Building 3
Lawrenceville, NJ 08648

   *Counsel for Appellant in No. 19-2968*

Vafa Sarmasti [ARGUED]
271 Route 46 West
Suite A205
Fairfield, NJ 07004

   *Counsel for Appellant in No. 19-2993*

Emily M. Bisnauth, Esq. [ARGUED]
Christopher W. Weber
Office of Attorney General of New Jersey
Department of Law & Public Safety
Division of Law
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, NJ 08625

   *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

**SCIRICA**, *Circuit Judge*

   This case involves a dispute over the employment classification of delivery drivers, either as independent contractors or as employees. The precipitating event in this litigation is the State of New Jersey's assertion of non-payment of unemployment compensation taxes because of the employers' misclassification. To resolve a part of this dispute, we must apply the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971).

   PDX North, Inc., a last-mile shipper, long classified its delivery drivers as independent contractors. After audits by the New Jersey Department of Labor and Workforce Development

3

(the "Department"), PDX was told that its drivers were misclassified. Because they were employees, the Department asserted PDX owed unemployment compensation taxes. PDX challenged this determination before the New Jersey Office of Administrative Law (the "New Jersey OAL") on February 19, 2015.

On September 22, 2015, PDX filed this suit in federal court against the Department's Commissioner contending New Jersey's statutory scheme for classifying workers was preempted by the Federal Aviation Administration Authorization Act of 1994 (the "FAAAA") and was unconstitutional under the Interstate Commerce Clause.

On February 29, 2016, the New Jersey OAL action was stayed at PDX's request and with the consent of the Department. Since then, this stay has been renewed every six months and remains in effect.

Meanwhile, SLS Delivery Services, Inc., also a last-mile shipper, was audited by the Department. Because SLS classified its drivers as independent contractors, it moved to intervene in PDX's action against the Commissioner on December 1, 2017. Intervention was granted on July 27, 2018 and SLS filed a complaint alleging nearly identical claims to PDX. The Department's audit against SLS is still pending.

The Commissioner filed a motion for judgment on the pleadings in the federal action on October 7, 2018, contending the case was barred by the *Younger* abstention doctrine. The trial court agreed and dismissed the entire case. We hold that the trial court correctly dismissed PDX, but it erred in dismissing SLS. Accordingly, we will affirm in part, reverse in

4

part, and remand this matter for further proceedings.[1]

## I.

PDX is a last-mile shipper of wholesale auto parts in New Jersey and other states along the Eastern Seaboard. Last-mile shippers, also known as same-day shippers, are companies providing domestic transportation of shipments within a 24-hour period, often on a same-day basis with geographic coverage generally limited to a single metropolitan area. Depending on the volume and timing of its customers' shipping needs, PDX hires "independent owner-operators" on an "as-needed" basis. PDX long classified these drivers as independent contractors.

In May 2012, after completing an audit of PDX for 2006 through 2009, the Department determined that PDX had misclassified its drivers, finding they were employees, not independent contractors. The Department reached the same conclusion in two subsequent audits examining 2010 through 2015. The parties do not provide the factual basis for this determination, nor do they provide the Department's reasoning.

---

[1] The trial court possessed subject-matter jurisdiction under 28 U.S.C. § 1331, assuming that the Tax Injunction Act does not withdraw that jurisdiction. *See Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) (noting that the *Younger* abstention doctrine "represents the sort of 'threshold question' [that] may be resolved before addressing jurisdiction"). We exercise jurisdiction under 28 U.S.C. § 1291 over the trial court's *Younger* abstention decision.

Under N.J. Stat. Ann. § 43:21-19(i)(6) (the "Independent Contractor Test"), New Jersey presumes workers are employees unless three statutory elements are met. Those elements generally require the business to show the worker is "free from [its] control or direction," the worker provides a service "outside the usual course of business," and the worker is "customarily engaged in an independently established trade." N.J. Stat. Ann. § 43:21-19(i)(6)(A)–(C). Some working relationships, however, are exempt from the Independent Contractor Test. One exemption, the Large Motor Carrier Exemption, may apply if, among other things, the drivers' vehicles weigh 18,000 pounds or more, the vehicles are used for the "highway movement of motor freight," and the driver receives "a percentage of the gross revenue generated." N.J. Stat. Ann. § 43:21-19(i)(7)(X) (the "Large Motor Carrier Exemption"). If the Large Motor Carrier Exemption applies, the elements of the Independent Contractor Test do not need to be satisfied for the worker to qualify as an independent contractor. *Id.*

Because the Department determined PDX had misclassified its drivers and did not qualify for the Large Motor Carrier Exemption, it concluded the drivers were employees for which PDX had not withheld unemployment compensation taxes. The Department assessed PDX for the amount owed, including principal, interest, and penalties, totaling $1,831,291.83 and filed administrative judgments for those assessments in 2015 and 2018.[2] As noted, PDX sought review

---

[2] After PDX's Amended Complaint was filed in July 2018, the Department filed an administrative judgment in New Jersey state court. In addition to the amount owed alleged in PDX's Amended Complaint, the judgment reveals $498,134.86 in

of the assessment amounts before the New Jersey OAL on February 19, 2015 and that action is currently stayed by PDX's motion (and without objection by the Department or Commissioner).

As noted, after filing its challenges with the New Jersey OAL, PDX brought an action for declaratory and injunctive relief in federal court on September 22, 2015. PDX accepts, for purposes of this suit, that it can neither satisfy the elements of the Independent Contractor Test nor the requirements for the Large Motor Carrier Exemption. As a result, its drivers must be classified as employees. In addition to the state and federal tax burdens, PDX complains of the additional costs and obligations of employment. It asserts that classifying these drivers as employees would require additional administrative and human resources costs, the outlay of capital to buy and maintain a fleet of trucks, and a larger payroll to ensure it can always meet peak demand. If it must classify its drivers as employees, PDX alleges, "it will be driven out of business."

PDX contends the Independent Contractor Test and the Large Trucker Exemption are preempted by the FAAAA because they are "related to a price, route, or service" of an interstate motor carrier. 49 U.S.C. § 14501(c)(1). Moreover, PDX asserts these provisions violate the Interstate Commerce Clause, U.S. Const. art. I, § 8, cl. 3, because of the "undue burdens" they impose on its business. It requested the trial court to find the Independent Contractor Test and the Large Motor Carrier Exemption preempted by the FAAAA and

---

interest, $81,540.00 in penalties, and $680.30 as an administrative cost assessment. As of September 2018, it appears PDX owed at least $2,411,645.91.

unconstitutional under the Interstate Commerce Clause. It also requested the trial court to enjoin the enforcement of the administrative judgments and the performance of future audits.

In a motion to dismiss for failure to state a claim and for lack of jurisdiction under Rule 12(b) filed on October 30, 2015, the Commissioner contended PDX's case should be dismissed on three separate abstention grounds. The Commissioner did not raise the *Younger* abstention doctrine. The trial court determined none of the cited abstention grounds were applicable, explicitly noting it did not rule on *Younger* abstention because no party had briefed the issue.

The case was reassigned to another judge and proceeded to discovery. As noted, SLS moved to intervene in the action on December 1, 2017 because it operated under a similar business model and was being audited by the Department. Intervention was granted on July 27, 2018, PDX submitted an amended complaint, and SLS submitted a complaint containing nearly identical allegations to PDX's amended complaint. After responding to the complaints, the Commissioner filed a motion for judgment on the pleadings under Rule 12(c) on October 7, 2018, contending for the first time that *Younger* abstention required dismissal.

The trial court granted the Rule 12(c) motion on *Younger* abstention grounds, dismissing the case in its entirety. It reasoned the *Younger* abstention doctrine applied because the proceeding was quasi-criminal in nature as to both PDX and SLS. The trial court then considered the applicable

8

*Middlesex* factors[3] for both PDX and SLS and concluded each factor favored abstention. Importantly, the trial court held the Department's audit of SLS was an ongoing state judicial proceeding. In the alternative, the trial court noted SLS may have waived its argument that it was not subject to an ongoing state proceeding. The trial court also raised the Tax Injunction Act ("TIA"), sua sponte, and stated it had "significant doubts that the TIA would permit this action to go forward" because this was "an action to enjoin the collection of New Jersey unemployment compensation contributions." But the trial court never ruled on the application of the Tax Injunction Act.

PDX and SLS timely appealed, focusing on two main issues.[4] First, they contend either Federal Rule of Civil

---

[3] In *Middlesex*, the Supreme Court announced three factors for courts to consider when determining whether *Younger* abstention is appropriate: (1) whether there is an ongoing judicial proceeding, (2) whether an important state interest is implicated in the state proceeding, and (3) whether the state proceedings provide an adequate opportunity to present constitutional arguments. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

[4] On appeal, the parties briefed and argued whether the TIA bars this action. Because the trial court never made any findings nor ruled on this issue, we decline to address it in the first instance. *See Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 401 (3d Cir. 2010) ("We ordinarily decline to consider issues not decided by a district court, choosing instead to allow that court to consider them in the first instance.") (citations omitted). On remand, we direct the trial court to address the application of the Tax Injunction Act as to SLS.

Procedure 12 or judicial estoppel prevented the invocation of the *Younger* abstention doctrine. Second, they contend the trial court incorrectly applied *Younger* abstention.

## II.[5]

First, we will consider whether Federal Rule of Civil Procedure 12 prohibited the trial court from considering *Younger* abstention. PDX and SLS contend the trial court should not have considered the Rule 12(c) motion because it was filed after extensive discovery was completed. They also contend the trial court should not have considered the *Younger* abstention argument, because the Commissioner consented to federal jurisdiction by not arguing it in the first motion to dismiss or by consenting to a stay in PDX's state action. We conclude it was not an abuse of discretion for the trial court to consider the Commissioner's 12(c) motion or to consider the *Younger* abstention arguments.

## A.

PDX and SLS's first contention is that the Commissioner's Rule 12(c) motion could not be considered because it was filed too late. They argue because "PDX ha[d] already submitted all of its discovery" it was inappropriate for the trial court to consider the Rule 12(c) motion. Appellants'

---

[5] PDX and SLS couch these alleged Rule 12 violations as equitable issues but fail to specify which equitable doctrines were violated. As such, we will consider these issues under Rule 12, not under equitable doctrines.

10

Br. 21. We disagree.[6]

Rule 12(c) states that such motions must be filed "[a]fter the pleadings are closed—but early enough not to delay trial." The pleadings in this case closed on October 5, 2018, only after SLS was permitted to intervene. The Commissioner's Rule 12(c) motion was filed on October 7, 2018. The motion therefore satisfies the first requirement of Rule 12(c). It also satisfies the second requirement because no trial date had been set—and therefore no trial date could have been delayed by its filing.[7] The trial court did not abuse its discretion in

---

[6] Generally, "matters of docket control," like whether to consider a motion, "are committed to the sound discretion of the district court." *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (citations omitted). We review for abuse of discretion and "will not interfere with a trial court's control of its docket 'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant.'" *Id.* at 817 (quoting *Eli Lilly & Co. v. Generix Drug Sales, Inc*., 460 F.2d 1096, 1105 (5th Cir. 1972)).

[7] PDX and SLS cite three cases contending the Rule 12(c) motion was too late. But they are distinguishable because they confronted the appropriateness of ruling on a Rule 12(c) motion notwithstanding factual disputes on the merits, not considerations of the timeliness of abstention. *See Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 45–46 (1st Cir. 2012) (considering "the question of whether it is appropriate to apply the plausibility standard after substantial pretrial discovery has taken place"); *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 325 (2d Cir. 2011) (discussing appropriateness of Rule 12(c)

considering the Commissioner's Rule 12(c) motion.

**B.**

PDX and SLS's second contention is that the Commissioner consented to federal jurisdiction over these matters. PDX and SLS point to the Commissioner's agreement to stay PDX's state court matter pending the outcome of the federal case and their failure to raise *Younger* abstention in their first motion to dismiss.[8] The Commissioner asserts he has never formally consented to federal court jurisdiction or waived his *Younger* abstention argument.

Consent to a stay of the state court proceeding in this case was not a waiver of *Younger* abstention, nor is it consent

---

because "evidence that had already been produced during discovery would fill the perceived gaps in the Complaint"); *Ion Wave Techs., Inc. v. SciQuest, Inc.*, 21 F. Supp. 3d 376, 380 (D. Del. 2014) (finding disposition of a claim involved "material factual disputes" and declining to decide its merits on a Rule 12(c) motion).

[8] PDX and SLS have not argued *Younger* abstention was waived under Rule 12. Although it appears to be without merit, we will not consider whether a failure to raise *Younger* abstention in a 12(b) motion would have prohibited the Commissioner from raising it in a 12(c) motion. *See Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 322, 322 n.5 (3d Cir. 2015) (stating Rule 12 permits filing a Rule 12(c) motion on grounds that were available, but not previously raised, in a Rule 12(b)(6) motion).

to federal jurisdiction. *See Ohio Civil Rights Comm'n v. Dayton Christian Sch.*, 477 U.S. 619, 626 (1986) (holding there was no waiver or consent because the state had not requested the federal court to adjudicate the merits); *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 409 (3d Cir. 2005) (concluding state's consent to stay of state action is irrelevant to *Younger* abstention analysis and does not constitute consent or waiver). The trial court did not err in considering the Commissioner's *Younger* abstention argument.

## III.

Second, we will consider whether the Commissioner is judicially estopped from asserting *Younger* abstention.[9] PDX and SLS argue the Commissioner was estopped from asserting the *Younger* abstention doctrine based on inconsistent litigation positions: consenting to a stay of PDX's state court action and asserting *Younger* abstention in federal court. Judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988). As stated previously, the Commissioner's position is not inconsistent. *Addiction Specialists, Inc.*, 411 F.3d at 409 (concluding state's consent to stay of state action is irrelevant to *Younger* abstention

---

[9] We review the invocation of judicial estoppel for abuse of discretion. *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001). A court "abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." *Id.* (quoting *In re O'Brien*, 188 F.3d 116, 122 (3d Cir. 1999)).

analysis). Accordingly, judicial estoppel did not preclude the trial court from considering *Younger* abstention.[10]

## IV.

Third, we determine whether the trial court erred in dismissing PDX and SLS's cases under *Younger* abstention.[11]

---

[10] PDX and SLS also contend the law-of-the-case doctrine foreclosed the trial court from deciding whether there was an "ongoing judicial proceeding" for *Younger* purposes. "Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." *United Artists Theatre Cir. v. Twp. of Warrington*, 316 F.3d 392, 397–98 (3d Cir. 2003) (emphasis omitted) (quoting *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001)). Whether the law-of-the-case doctrine applies is subject to plenary review. *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 988 F.2d 414, 429 (3d Cir. 1993). Reviewing the previous trial court opinion, we conclude no issue relating to *Younger* abstention was either explicitly or implicitly decided.

[11] "We exercise plenary review over a trial court's . . . determination of whether *Younger* abstention is proper." *Hamilton v. Bromley*, 862 F.3d 329, 333 (3d Cir. 2017) (citation omitted). At an earlier time, we reviewed the decision to abstain—after ensuring the legal requirements had been met—for abuse of discretion. *See, e.g.*, *Addiction Specialists, Inc.*, 411 F.3d at 408 ("Once we determine that the requirements have been met, we review a district court's decision to abstain under *Younger* abstention principles for abuse of discretion." (quoting *Gwynedd Props., Inc. v. Lower*

*Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1995)) (citations omitted)). But the Supreme Court in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) stated "*Younger* exemplifies one class of cases in which federal-court abstention is required . . . ." And since then we have applied a de novo standard.

This practice is not uniform throughout the circuits, but several have found the same. *Compare Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 191 (1st Cir. 2015) (applying de novo standard of review to *Younger* abstention), *Trump v. Vance*, 941 F.3d 631, 636 (2d Cir. 2019) (same), *Aaron v. O'Connor*, 914 F.3d 1010, 1015 (6th Cir. 2019) (same), *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 816 (7th Cir. 2014) (same), *Rynearson v. Ferguson*, 903 F.3d 920, 924 (9th Cir. 2018) (same), and *Elna Sefcovic, LLC v. TEP Rocky Mt., LLC*, 953 F.3d 660, 669 (10th Cir. 2020) (same), *with Golphin v. Thomas*, 855 F.3d 278, 286 (4th Cir. 2017) (applying abuse of discretion standard of review to *Younger* abstention), *Gates v. Strain*, 885 F.3d 874, 879 (5th Cir. 2018) (applying de novo standard of review for legal determinations and abuse of discretion standard of review for decision to abstain to *Younger* abstention), *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 609–10 (8th Cir. 2018) (same), *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1266 (11th Cir. 2019) (applying abuse of discretion standard of review to *Younger* abstention), and *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003) (applying de novo standard of review for legal determinations and abuse of discretion standard of review for decision to abstain to *Younger* abstention).

When we review a district court's judgment on a Rule

The trial court correctly dismissed PDX's case but erred in dismissing SLS's case because, for SLS, there was no ongoing judicial proceeding.

Generally, "a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" *Sprint Commc'ns., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). *Younger* abstention is an exception to that rule that applies when certain types of state proceedings are ongoing at the time a federal case is commenced. *Id.* Abstention serves a dual-purpose in these situations: (1) to promote comity, "a proper respect for state functions," by restricting federal courts from interfering with ongoing state judicial proceedings and (2) to restrain equity jurisdiction from operating when state courts provide adequate legal remedies for constitutional claims and there is no risk of irreparable harm. *Id.*

*Younger* abstention is only appropriate in three types of underlying state cases: (1) criminal prosecutions, (2) civil enforcement proceedings, and (3) "civil proceedings involving orders in furtherance of the state courts' judicial function."

---

12(c) motion for judgment on the pleadings, we must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party," and we may not affirm the grant of such a motion "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quotation marks omitted).

*ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014) (citing *Sprint Commc'ns., Inc.*, 571 U.S. at 78). In this case, the parties agree that *Younger* abstention is only proper if we determine the underlying state proceedings are civil enforcement proceedings that are quasi-criminal in nature.

To assess whether underlying proceedings are quasi-criminal in nature, we consider whether:

> (1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges. . . . We also consider whether the State could have alternatively sought to enforce a parallel criminal statute.

*ACRA Turf Club, LLC*, 748 F.3d at 138 (citing *Sprint Commc'ns., Inc.*, 571 U.S. at 79–80).

If we conclude the civil proceeding here was quasi-criminal in nature, we must then consider the *Middlesex* factors: (1) whether there are "ongoing judicial proceeding[s]"; (2) whether those "proceedings implicate important state interests"; and (3) whether there is "an adequate opportunity in the state proceeding to raise constitutional challenges." *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432.

**A.**

We will consider three factors described in *Sprint* to

17

determine whether PDX and SLS are subject to civil enforcement actions that are quasi-criminal in nature.[12] As described below, each factor supports a finding that the underlying proceedings are civil enforcement actions that are quasi-criminal in nature.

**1.**

First, we consider whether the underlying action was commenced by New Jersey in its sovereign capacity. PDX contends it initiated the challenge to the assessment, not New Jersey. We disagree. The state administrative action was commenced by New Jersey in its sovereign capacity as to PDX. Unlike in *ACRA Turf Club, LLC*, where "no state actor conducted an investigation or filed any type of formal complaint," here the Commissioner performed multiple audits of PDX and issued multiple formal assessments after the culmination of those audits. *ACRA Turf Club, LLC*, 748 F.3d at 138. The New Jersey OAL action only occurred because of the Commissioner's actions.[13] As the trial court explained, "[t]he fact that PDX is technically the party seeking review before the [New Jersey OAL] is a mere function of New Jersey administrative procedure." As to PDX, the New Jersey OAL

---

[12] We will not evaluate whether there are "other similarities to criminal actions," as it is sufficiently clear from the other factors that this is a civil enforcement action that is quasi-criminal in nature.

[13] The Supreme Court does not require the state to commence the judicial proceedings, as PDX seems to suggest, but only notes it is often the case. *See Sprint Commc'ns., Inc.*, 571 U.S. at 79.

action was, for *Younger* purposes, commenced by New Jersey in its sovereign capacity.

**2.**

Second, we consider whether the proceeding sanctions wrongful conduct. PDX and SLS contend the proceeding does not because the only remedies available are civil in nature. The Commissioner disagrees, pointing out that misclassification of workers and failure to withhold unemployment compensation taxes is wrongful and can result in penalties, fines, and imprisonment. *See* N.J. Stat. Ann. § 43:21-14 (describing civil penalties for failing to report or withhold unemployment compensation taxes); N.J. Stat. Ann. § 43:21-16(e) (describing criminal fine and term of imprisonment for intentionally false or fraudulent report). As to both PDX and SLS, assessment may result in sanctions for a wrongful act.

"Sanctions are retributive in nature and are typically imposed to punish the sanctioned party 'for some wrongful act.'" *ACRA Turf Club, LLC*, 748 F.3d at 140 (quoting *Sprint Commc'ns., Inc.*, 571 U.S. at 79). Misclassification of workers that results in the non-payment of state taxes is "wrongful conduct."

Further, the Commissioner has imposed over $30,000 in penalties on PDX—in addition to the back taxes and interest allegedly owed—and could penalize SLS similarly. *See* N.J. Stat. Ann. § 43:21-14 (describing civil penalties for failing to report or withhold unemployment compensation taxes). Penalties are, by their very nature, retributive: a sanction for wrongful conduct. *See Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 182 (3d Cir. 2014) (concluding a

19

"disciplinary hearing" and possible termination of employment were sanctions for wrongful conduct, making false statements). Accordingly, we find this second factor favors finding this is a civil enforcement action that is quasi-criminal in nature.

**3.**

Third, we consider whether there is also a criminal analog to this action. PDX and SLS contend there is no criminal analog because they have not been criminally charged. But the question is not whether the current action is criminal or whether criminal charges are warranted. To hold as PDX and SLS contend would erase the quasi-criminal category of abstention, as it would require criminal charges to be brought for a quasi-criminal action to exist.

The question is whether there is a criminal analog. *See Gonzalez*, 755 F.3d at 182 (holding this factor satisfied because "New Jersey could have vindicated similar interests by enforcing its criminal perjury statute"). Under New Jersey law, employers who do not pay or withhold contributions as lawfully required may face a $1,000 fine and a sentence of imprisonment of up to ninety days. N.J. Stat. Ann. § 43:21-16(e). PDX and SLS acknowledge the risk of New Jersey criminally charging them in their pleadings, stating they fear criminal consequences. There is a criminal analog here. This third factor favors finding this civil enforcement action is quasi-criminal in nature. Considering these factors together, we hold this is a civil enforcement action that is quasi-criminal in nature.

**B.**

Because we have determined this is a civil enforcement action that is quasi-criminal in nature, we will consider the *Middlesex* factors as to PDX and SLS. The trial court did not err in finding the *Middlesex* factors favored *Younger* abstention as to PDX's case. PDX's New Jersey OAL action is an ongoing judicial proceeding in which New Jersey has a strong interest and PDX may raise any constitutional claims. But the trial court erred in finding there was an ongoing judicial proceeding as to SLS and in dismissing SLS's case on *Younger* abstention grounds, because SLS is not subject to an ongoing state judicial proceeding. Because the analyses diverge, we will discuss PDX and SLS separately.

**1.**

First, we consider whether PDX is involved in ongoing judicial proceedings. PDX contends it is not subject to an ongoing state judicial proceeding because the New Jersey OAL matter is stayed.[14] But "state proceedings are 'ongoing' for *Younger* abstention purposes, notwithstanding [a] state court's stay of proceedings" if the state proceeding "was pending at the time [the plaintiff] filed its initial complaint in federal

---

[14] PDX does not disagree that the New Jersey OAL matter is judicial in nature. We note proceedings presided over by an Administrative Law Judge at the New Jersey OAL are judicial for purposes of *Younger* abstention. *See, e.g.*, *Zahl v. Harper*, 282 F.3d 204, 209 (3d Cir. 2002) (discussing a New Jersey OAL action presided over by an ALJ and concluding "[s]tate administrative proceedings such as this have long been recognized as judicial in nature").

21

court." *Addiction Specialists, Inc.*, 411 F.3d at 408–09. The New Jersey OAL action was ongoing at the time PDX brought its federal action. This *Middlesex* factor favors *Younger* abstention as to PDX.

Second, we consider whether these proceedings implicate an important state interest. PDX sidesteps this issue by pointing to the merits of its federal case and arguing federal preemption supersedes any state interest to the contrary. Even assuming PDX is correct about the merits of its claims, we do not consider the merits "when we inquire into the substantiality of the State's interest in its proceedings." *O'Neill v. City of Phila.*, 32 F.3d 785, 791–92 (3d Cir. 1994) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364–65 (1989)). "Rather, what we look to is the importance of the generic proceedings to the State." *Id.* New Jersey has an interest in the collection of unemployment compensation taxes through proper enforcement actions in the New Jersey OAL and its courts. PDX provides nothing to rebut this fact. The state administrative proceedings implicate important state interests.

Finally, we consider whether there is an adequate opportunity in the state proceedings for PDX to present its constitutional claims. PDX is currently subject to a New Jersey OAL action. PDX argues the New Jersey OAL lacks the authority to consider their constitutional claims because the New Jersey OAL may only consider constitutional issues that are necessary to the issue presented. They narrowly define the issue presented to the New Jersey OAL to include only whether the workers were properly classified. But PDX admits that constitutional questions may be reserved for the judicial review process, after the administrative process is complete.

"The Supreme Court has held that this third element is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination." *O'Neill*, 32 F.3d at 792 (citing *Dayton Christian Sch.*, 477 U.S. at 629; *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 436). As noted, PDX admits its claims may be heard at the judicial review phase. Our review of New Jersey law confirms that these constitutional claims may be raised in this state judicial proceeding. PDX has an adequate opportunity to present those claims.

Balancing these factors, we will affirm the trial court's conclusion that it should abstain as to PDX. All the *Middlesex* factors point towards abstention and the trial court did not err in dismissing PDX's case on *Younger* abstention grounds.

**2.**

The trial court erred in dismissing SLS's case on *Younger* abstention grounds. We first consider whether there was an ongoing judicial proceeding. The first *Middlesex* factor does not favor *Younger* abstention as to SLS because it is still at the audit stage. The Commissioner urges us not to reach the issue, offering three points in rebuttal: (1) SLS waived this argument in the trial court; (2) SLS concedes a state action is imminent; and (3) SLS is stonewalling the Commissioner, thwarting its ability to conclude the audit and issue an assessment. We disagree with each contention.

We see no waiver. The trial court erred because "failures to raise [an] issue in the District Court . . . are . . .

23

more properly characterized as forfeitures rather than as waivers." *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 148 (3d Cir. 2017). Moreover, SLS twice pointed out in its opposition brief that *Younger* abstention does not apply because there is no pending state proceeding. While this contention may have benefitted from further factual and legal development, it was neither waived nor forfeited.

The Commissioner's final two contentions are inapposite. If a judicial proceeding is only *imminent*, *Younger* abstention is inappropriate because that proceeding is not *pending* or *ongoing*. *See Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 463–64 (3d Cir. 2019) ("That Malhan's garnishment proceeding is merely threatened . . . makes abstention 'clearly erroneous.'" (quoting *Miller v. Mitchell*, 598 F.3d 139, 146 (3d Cir. 2010))). The Commissioner's assertion that SLS is stonewalling cannot be considered under our standard of review: we must draw all reasonable inferences in favor of SLS based on the allegations in its complaint. It is also unsupported by the evidence of record.

Accordingly, we consider whether SLS's audit is an "ongoing judicial proceeding." The Commissioner's position seems to be that once the Department initiates a formal audit, an "ongoing judicial proceeding" exists for *Younger* purposes. SLS's position is that a proceeding is only ongoing once it becomes judicial in nature. On these facts, we find the initiation of an audit is insufficient to serve as an ongoing judicial proceeding for *Younger* purposes.

The trial court—and the Commissioner—rely on two cases that involved the issuance of a search warrant and a grand

jury subpoena.[15] Both cases are inapposite because they (1) are criminal *Younger* cases, (2) rely on New York state law as to the definition of "criminal proceeding," and (3) involve judicial oversight not part of the Department's audit process. *Nick v. Abrams*, 717 F. Supp. 1053, 1056 (S.D.N.Y. 1989) (search warrant); *Notey v. Hynes*, 418 F. Supp. 1320, 1326 (E.D.N.Y. 1976) (grand jury subpoena). These cases do not inform our decision here.

On the relevant facts in this case, the Department's audit did not involve judicial oversight and cannot be considered an ongoing judicial proceeding for *Younger* abstention purposes. We believe our colleagues on the First, Fourth, Fifth, Seventh, and Eleventh Circuits would agree. *See Google, Inc. v. Hood*, 822 F.3d 212, 224 (5th Cir. 2016) (holding "that the issuance of a non-self-executing administrative subpoena does not, without more, mandate *Younger* abstention"); *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 813 (7th Cir. 2014) (holding an ongoing election board investigation was "too preliminary a proceeding to warrant *Younger* abstention"); *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 519 (1st Cir. 2009) (holding an "agency's investigation . . . was at too preliminary a stage to constitute a 'proceeding' triggering *Younger* abstention"); *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1229 (4th Cir. 1989) ("We decline to hold that *Younger* abstention is required whenever a state bureaucracy

---

[15] The trial court also cited one of our precedential cases, but that involved a child support order that subjected an individual to an ongoing obligation, even though he was not then obligated to attend a judicial hearing. *Anthony v. Council*, 316 F.3d 412, 418–21 (3d Cir. 2003). There is no such judicial order here.

has initiated contact with a putative federal plaintiff. Where no formal enforcement action has been undertaken, any disruption of state process will be slight."); *Major League Baseball v. Butterworth*, 181 F. Supp. 2d 1316, 1321 n.2 (N.D. Fla. 2001), *aff'd sub nom. Major League Baseball v. Crist*, 331 F.3d 1177 (11th Cir. 2003) (holding *Younger* abstention inappropriate when Florida's attorney general served civil investigative demands).

The first *Middlesex* factor does not favor *Younger* abstention as to SLS. Because SLS is not subject to an ongoing state proceeding, there is no state interest in those proceedings and SLS does not have the opportunity to present its constitutional claims. Accordingly, we will reverse the trial court's dismissal of SLS's case because it erred by invoking the *Younger* abstention doctrine. We will remand this matter to the trial court to allow SLS to pursue its legal and constitutional challenges.[16]

## V.

For the reasons expressed, we will affirm in part, reverse in part, and remand this matter to the trial court for further proceedings.

---

[16] The trial court did not address the merits of the action. The Commissioner contends we may still consider the merits of the action and should affirm the trial court's dismissal of the case, even if we conclude *Younger* abstention is inapplicable. While we may affirm on any grounds apparent from the record, we decline to address the merits here. *Khazin v. TD Ameritrade H2olding Corp.*, 773 F.3d 488, 491 (3d Cir. 2014).